IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL BERRY,

                Plaintiff,                             OPINION AND ORDER

   v.

                                                      21-cv-220-wmc

WISCONSIN CENTRAL LTD. d/b/a
Canadian National Railway Co. or
Canadian National,

                Defendant.

---

Plaintiff Michael Berry asserts claims against his employer Wisconsin Central Ltd. ("WCL"), under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, for injuries that he sustained after falling in a railroad yard on October 29, 2019, while working as a railway conductor. Before the court is defendant WCL's motion seeking partial summary judgment on certain of plaintiff's claims (or at least theories of liability) as precluded by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. WCL also argues that other claims fail as a matter of law. (Dkt. #22.) For the reasons that follow, the court rejects defendant's arguments and will deny its motion.

UNDISPUTED FACTS[1]

During all times relevant to Michael Berry's claims, he was working as a conductor for WCL, a railroad company. On October 29, 2019, Berry and engineer Kevin Van Riper were tasked with operating a train from Blair to Wisconsin Rapids, Wisconsin. After

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed when viewed in the light most favorable to plaintiff as the nonmoving party.

arriving in Wisconsin Rapids after nightfall, they were then to set out the cars from Blair on a side track, pick new cars up, and transport the reconfigured train back to Blair. To accomplish this, they "shoved" the train upon arrival, using what is known as a "reverse train move" into the so-called "Tork" track at the Wisconsin Rapids railroad yard where the Blair cars would be set out. As conductor, Berry "protected the point" of the shove by riding the last railcar on the train, then counting down the cars as Van Riper reversed the train into the Tork track.

However, once this maneuver was completed, Berry then began walking on the west side of the track back toward the engine. Holding his lantern in his hand, Berry pointed it in the direction he was walking, but unfortunately lost his footing and slipped beside the train. At his deposition, Berry testified that he fell because of a combination of it being dark, "the angle of the ground, the tie butts, the large ballast, the leaves, [and] the mud that was under the ballast." (Pl.'s Resp. to Def.'s PFOFs (dkt. #35) 4 (quoting Berry Dep. (dkt. #36) 134-135).)[2] Worse, in landing, Berry describes striking his lower back and hip on a tree stump, which was located approximately four to six feet from the nearest rail.

At some point, train engineer Van Riper realized that Berry was taking longer to return to the engine than typical and left the engine to check on him. Van Riper found

---

[2] Defendant disputes much of plaintiff's account at summary judgment, including to the extent plaintiff proposed additional findings of facts in his response to defendant's findings, rather than proposing them in a separate filing. As a result, the court agrees with defendant that plaintiff failed to follow the court's established procedures for summary judgment submissions despite being provided to both sides in the preliminary pretrial conference order. (*See* hyperlink at dkt. #9.) Nonetheless, defendant not only had the same basic opportunity to reply to these additional proposed findings, but did so in great detail. Accordingly, the court reviewed and accepts plaintiff's proposed findings as the non-moving party to the extent not otherwise objected to and reasonably supported by the record despite not being set forth in a separate filing as strongly preferred.

Berry and called for assistance. Zachary Dean, the trainmaster on duty in the yard at that time, next responded to the scene, where he found Berry sitting beside the train. An ambulance was then called, and Berry was transported to the hospital.[3]

## OPINION

In its motion for summary judgment, defendant asserts that a number of plaintiff's claims (or parts of them) are precluded by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. In addition to this principal argument, defendant also seeks summary judgment on the basis that: (1) a stump was present fails as a matter of law because it did not interfere with any of Berry's trackside duties and, therefore, WCL cannot be held liable under 49 C.F.R. § 213.37 as a matter of law; and (2) defendant cannot be liable for any fall caused by wet leaves because FELA does not support a claim based on the "vagaries of weather or climatic conditions." (Def.'s Opening Br. (dkt. #23) 11-14.) The court addresses each of these argument in turn below.

**I. Federal Preclusion**

Enacted in 1970, the FRSA contains the following preemption provision:

> (1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

---

[3] Defendant also submits a number of facts concerning its compliance with various regulations enacted under the FRSA, including facts about frequency of yard inspections, as well as the training and experience of the inspector. (Def.'s PFOFs (dkt. #25) ¶¶ 13-20.) Defendant further proposes facts concerning the presence of leaves in the yard and the nature and location of the ballasts that Berry contends contributed to his fall. (Id. ¶¶ 21-24.) However, the court has not recounted these details in light of its determination that the FSRA does not preclude plaintiff's claims as explained below.

> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
> (C) does not unreasonably burden interstate commerce.

49 U.S.C.A. § 20106. While this provision preempts state law, including state tort law, except under the normal exception set forth in (2) above, defendant acknowledges that the provision does not preempt -- and, indeed, a federal statute cannot preempt -- another federal statute. Thus, defendant's "preemption" argument as to plaintiff's federal claims turns entirely on whether FRSA precludes application of or supersedes FELA where the claims at issue implicate Federal Railroad Administration ("FRA") regulations.

Specifically, defendant contends that any claims or theories of liability premised on the frequency of visual inspections or failure to perform them properly, the training and experience of the inspector, ballast size or slope are precluded because they implicate FRA regulations. As support, defendant points to the Seventh Circuit's conclusion in *Waymire v. Western Railway Company*, 218 F.3d 773 (7th Cir. 2000), that an employee's FELA claims against a railway for an accident involving one of its trains were superseded by the FRSA because the train's speed and warning devices complied with both FRSA and FRA regulations. In so holding, the court explained that unlike the "vast majority of courts examining lawsuits arising out of automobile/train collisions do so under state law," the

4

case before it concerned the "interaction of two federal statutes." *Id.* at 775. Finding "the opinion of the Supreme Court [in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993)] on the subject of preemption of unsafe train speed claims" and other, similar preemption cases issued by lower courts "instructive," the Seventh Circuit was persuaded that FELA had to be superseded to "uphold FRSA's goal of uniformity." *Id.* at 776.

In response, however, plaintiff directs this court to a later United States Supreme Court decision in *POM Wonderful LLC v. Coca-Cola Company*, 573 U.S. 102 (2014), which considered the interplay between two federal statutes, albeit not the ones at issue in this case, and also addressed whether the one statute that creates a federal regulatory scheme *and* expressly preempts state law necessarily precludes claims under (or otherwise supersedes) another federal statute. However, in that case, the Supreme Court held that the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331, 343, does *not* preclude a private party from bringing a claim challenging the mislabeling of food products under the Lanham Act, 15 U.S.C. § 1125. *POM Wonderful*, 573 U.S. at 106. In so holding, the Supreme Court initially explained that because the preemption provision in the FDCA -- like that in the FRSA -- only preempts state law, the question before it was not one of preemption, but rather of preclusion. Still, the Court noted that preemption "principles are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject," although obviously no "state-federal" balancing would be necessary. *Id.* at 111-12. Even acknowledging this was at bottom a "statutory interpretation case," however, failed to answer fully whether the Court should "reconcile or harmonize the statutes" as Coca-Cola urged in arguing for preclusion, contends, *or* "enforce both statutes

5

in full unless there is a genuinely irreconcilable conflict" as POM Wonderful urged. *Id.* at 112-13.

Instead, in finding no preclusion, the Court was persuaded by the fact that: (1) the FDCA does not expressly forbid or limit Lanham Act claims; and (2) the two statutes have largely coexisted since the passage of the Lanham Act in 1946 without any action by Congress to limit the Act's reach out of concern that it interfered with the goals of the FDCA. Further, the Court concluded that "[b]y taking care to mandate express preemption of some state laws, Congress if anything [was] indicat[ing] it did not intend the FDCA to preclude requirements arising from other sources." *Id.* at 114. Moreover, the Court found each statute "has its own scope and purpose," with (1) the Lanham Act protecting "commercial interests" and (2) the FDCA protecting "public health and safety," and thus, finding either statute precluded the other "would show disregard for the congressional design." *Id.* at 115. Finally, while the Court found Congress intended national uniformity in passing the FDCA, it also held that "[t]he centralization of FDCA enforcement authority in the Federal Government does not indicate that Congress intended to foreclose private enforcement of other federal statutes." *Id.* at 117. As a result, the Court held that allowing Lanham Act claims concerning food labeling to survive "is quite different from [allowing] the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions that are partially forbidden by the FDCA's preemption provision." *Id.*

Still, the Seventh Circuit has not revisited its decision in *Waymire* since the United States Supreme Court's 2014 *POM Wonderful* decision. Nor have the parties directed the

6

court to any other federal circuit court having considered whether a FELA claim is precluded by FRSA and FRA regulations since *POM Wonderful*. Tellingly, however, a number of district courts *have* relied on the Supreme Court's reasoning in *POM Wonderful* to reject similar preclusion challenges to FELA claims, distinguishing pre-2014 circuit court decisions, including that of the Seventh Circuit in *Waymire*. *See Webb v. Union Pac. R. Co.*, No. 2:19-cv-04075-MDH, at *5 (W.D. Mo. Aug. 8. 2020) ("It is further worth noting the trend of cases ruling on the FRSA's preclusive effect over FELA since the *POM Wonderful* decision has been to find that FELA is not precluded."); *Henderson v. Nat'l R.R. Passenger Corp.*, 87 F. Supp. 3d 610, 616 (S.D.N.Y. 2015) ("This Court respectfully disagrees with the decisions in *Waymire*, *Lane*, and *Nickels*, all of which predate the Supreme Court's [2014] decision in *POM Wonderful*, which is discussed further below."); *Madden v. Anton Antonov & AV Transportation, Inc.*, 156 F. Supp. 3d 1011, 1020 (D. Neb. 2015) ("This Court is not persuaded by the reasoning of *Waymire* or its progeny, and respectfully declines to follow suit. Neither the plain text of FRSA nor its goal of national uniformity demand preclusion of FELA claims. Rather, the text of FRSA and the purposes underlying both it and FELA demand the opposite." (citing *POM Wonderful*)).

In *Jones v. BNSF Railway Company*, 306 F. Supp. 3d 1060 (C. D. Ill. 2017), Judge Darrow also recognized the Seventh Circuit's holding in *Waymire*, while nonetheless following the reasoning of the Supreme Court in *POM Wonderful*, concluding that the FRSA does not preclude claims under FELA even when FRA railroad regulations are implicated, like the inspection and ballast regulations at issue here. *Id.* at 1070. As was Judge Darrow, this court also feels compelled to conclude that the Seventh Circuit's

7

reasoning in *Waymire* for finding preclusion no longer holds up in the face of *POM Wonderful*. In particular, as Judge Darrow noted in *Jones*, the Seventh Circuit in *Waymire* primarily relied on the need for national uniformity in finding that the FRSA superseded FELA, but in doing so never considered the text of the two statutes, much less the purpose, structure and enforcement mechanisms underlying each, were complementary, as the Supreme Court instructed to do in *POM Wonderful* in conducting preclusion analysis. *Jones*, 306 F. Supp. at 1068-69. Furthermore, as Judge Darrow also observed, the Supreme Court in *POM Wonderful* expressly rejected the importance of national uniformity in a preclusion analysis between two federal statutes. *Id.* at 1069. As such, the court agrees with Judge Darrow and the other district courts, holding that FRSA and its regulations does not preclude FELA claims and as such, rejects defendant's argument to the contrary.[4]

## II. Other Arguments

In a cursory fashion, defendant raises two additional bases for partial summary judgment, which really attack only aspects of plaintiff's FELA claim in an attempt to narrow it. First, plaintiff argues that because the stump that plaintiff fell on "did not cause him to fall—he did not trip or slip on it—nor did it affect his trackside duties in any way,"

---

[4] As mentioned above, the Seventh Circuit has not had the opportunity to revisit the issue of FELA preemption since the Supreme Court issued its decision in *POM Wonderful*. However, the Seventh Circuit recognized the importance of the holding in *POM Wonderful* in considering a preclusion argument in a different statutory context. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1157 (7th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1612 (2018) ("Moreover, '[w]hen two statutes complement each other'—that is, 'each has its own scope and purpose' and imposes 'different requirements and protections'—finding that one precludes the other would flout the congressional design." (quoting *POM Wonderful*, 134 S. Ct. 2228, 2238). Still, because the Seventh Circuit has not confronted the holding of *POM Wonderful* in the context of a FELA claim, the court would consider certifying this case for interlocutory appeal should the parties jointly move under 28 U.S.C. § 1292(b).

it being there did not violate 49 C.F.R. § 213.37, which addresses a railroad company's obligations to control vegetation. (Def.'s Opening Br. (dkt. #23) 11.) As an initial matter, even though plaintiff mentions various regulations in his complaint, since he is pursuing FELA claims, it is not clear what, if any, role FRA regulations should play in establishing a violation of FELA for the reasons just discussed above.[5] Regardless, as described above, plaintiff contends that he fell because of a *combination* of it being dark, "the angle of the ground, the tie butts, the large ballast, the leaves, [and] the mud that was under the ballast." (Pl.'s Resp. to Def.'s PFOFs (dkt. #35) 4 (quoting Berry Dep. (dkt. #36) 134-135).) The plaintiff does not contend the stump caused or even contributed to his tripping, only that he fell onto it, and as a result, it substantially contributed to his injuries. As such, this portion of the motion simply fails to confront the actual claim plaintiff is pursuing under any theory of liability. Therefore, the court will deny this motion, albeit without prejudice to defendant seeking to constrain in motions *in limine* or otherwise any argument that the stump's location is somehow relevant to a finding of liability.[6]

Second, defendant contends that plaintiff cannot rely on wet leaves as a basis for pursuing his FELA claims, directing the court to a Tennessee Court of Appeals case for the

---

[5] There is no private right of action for violations of FRA regulations or, at least, plaintiff has not directed the court to any basis for finding such a right. Instead, an injured party may bring a claim under FELA, as plaintiff has done here. *See Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 682 (7th Cir. 2006) ("The Supreme Court held in *Kernan* [*v. American Dredging Co.*, 355 U.S. 426 (1958)] that when an employer governed by FELA violates a statutory or regulatory standard and its employee is injured as a result, the employer may be held liable under FELA—even if the injury is not the type against which the statute was meant to protect."). The relevance, if any, to violations of FRA regulations in bringing a claim under FELA can be addressed by the parties before trial.

[6] Of course, this would not bar evidence of the stump's presence being a contributing factor to the severity of plaintiff's injuries during the damages portion of any trial.

proposition that "the temporary presence of leaves on the ground is not enough to impose liability here because railroad companies have no control over the vagaries of the weather or climatic conditions." (Def.'s Opening Br. (dkt. #23) 13 (citing *Turner v. Clinchfield R.R. Co.*, 489 S.W.2d 257, 261 (Tenn. Ct. App. 1972)).)  While the court agrees with plaintiff that the presence of piles of wet leaves is distinguishable from the ice at issue in *Turner*, the court nonetheless recognizes as defendant points out that "FELA does not make the railroad an insurer against injuries."  *Reardon v. Peoria & Pekin Union Ry.*, 26 F.3d 52, 55 (7th Cir. 1999).  Accordingly, the court contemplates that the jury will be instructed on the proper standard of liability under FELA, and it will be up to the jury to determine whether defendant was negligent under that standard in failing to address piles of wet leaves in the area surrounding the track, among other fact issues.  As such, the court rejects this basis for summary judgment as well without deciding on the possible relevance, if any, of a regulation addressing the "vagaries of the weather."

One final note:  in responding to defendant's motion for summary judgment, plaintiff devotes several pages describing the negligence standard at issue in FELA cases and arguing for a more relaxed standard.  The court declines to take up this issue in the context of summary judgment, since it is not material to defendant's motion.  Nonetheless, the parties should front this issue as appropriate, in motions *in limine* or other pretrial briefing, as well as in their respective jury instruction submissions.

ORDER

IT IS ORDERED that defendant Wisconsin Central Ltd.'s motion for partial summary judgment (dkt. #11) is DENIED.

Entered this 9th day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge