IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL BERRY,

                              Plaintiff,                    OPINION and ORDER

        v.                                                  21-cv-220-wmc

WISCONSIN CENTRAL LTD. d/b/a
Canadian National Railway Co. or
Canadian National,

                              Defendant.

While working as a railroad conductor for defendant Wisconsin Central Ltd., plaintiff Michael Berry was injured after falling in the train yard. He contends that his injuries were caused by Wisconsin Central's negligence by failing to inspect, maintain and light its tracks properly in the location where he fell. He is proceeding to trial on his claims under the Federal Employers' Liability Act and related safety regulations. With trial scheduled for September 6, 2022, and the court to hold a final pretrial conference ("FPTC") on August 24th at 3:00 p.m., this order addresses the parties' motions in limine.

## OPINION

### I. Berry's Motions in Limine

#### A. Motion to preclude evidence concerning Berry's alleged past use of drugs and addiction treatment (dkt. #85)

Berry asks the court to exclude all evidence of Berry's past addiction to opioids and current treatment with Suboxone as irrelevant and highly prejudicial. Wisconsin Central responds that it does not intend to offer evidence of Berry's past drug use or current Suboxone use to argue that either played any role in the underlying incident. However, it

does wish to argue that Berry's opioid addition is relevant to damages, because of evidence that his prior opioid use (and his current avoidance of opioids) increased the level of pain he experienced from the injuries at issue in this case.  Even if the court were willing to allow such an argument in the damages phase of trail, defendant Wisconsin Central fails to cite any admissible, expert testimony to support its assertion, or other evidence from which a lay jury might reasonably infer such an impact.  Instead, defendant relies solely on:  (1) a note in Berry's medical file stating that he reported a prior history of opioid addiction to a provider after his injury (dkt. #119-1, at 2), which is proof of nothing regarding any impact on his pain level after the accident; and (2) a note from a treating physician that Berry had more pain than average "likely, in part, due to his high preop narcotic dependence in the past," which reads as nothing more than speculative, non-specific, hearsay whose arguable probative value is far outweighed by its likely undue prejudice.  (Dkt. #119-2, at 2).  *See Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) (warning that there is "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony") (citation omitted).  Accordingly, the court will grant the motion.

### B. Motion to preclude Wisconsin Central from referring to collateral source benefits, including Railroad Disability Benefits (dkt. #86)

Berry asks the court to exclude evidence of collateral source benefits, including the Railroad Retirement Board disability benefits that he is receiving because of his accident. Berry contends that the benefits are not admissible under *Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963).  In that case, the Supreme Court rejected the railroad's argument

that benefits received under the Railroad Retirement Act are admissible to "show a motive for [the employee's] not continuing work, and for his deciding not to continue going back to work after the last accident." *Id.* at 254–55.  The Court reasoned that "there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension," which "evidence of collateral benefits is readily subject to misuse by a jury." *Id.* at 255.  Indeed, the Court went so far as to hold that "it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act."  Given these rather sweeping pronouncements as to its limited probative value and likely prejudice, our sister, federal district court in Wisconsin interpreted *Eichel* as holding that railroad benefits "cannot even be *mentioned* in an effort to establish a plaintiff's motive to exaggerate the extent of his injury or disability." *Larson v. Wisconsin Cent. Ltd.*, No. 10-C-446, 2012 WL 359672, at *1 (E.D. Wis. Feb. 2, 2012) (emphasis added).

Defendant Wisconsin Central nevertheless seeks to introduce evidence that Berry declined to look for work within his physical restrictions because he does not want to lose his railroad disability benefits, arguing that *Eichel* is not a categorical bar on introducing evidence of railroad benefits, but rather only precludes reliance on this evidence to argue that plaintiff's damages should be reduced, or that Berry is malingering or exaggerating his injuries to continue receiving disability benefits.  This court is hard-pressed to see, much less credit, defendant's facile attempt to distinguish between using the receipt of benefits as a motive to malinger and the fear of loss of these same benefits as a motive not to work.

3

Regardless, any arguable distinction does not hold up against the Supreme Court's repeated warnings in *Eichel* of the likely prejudice caused by its introduction in the case.  Moreover, the only Seventh Circuit case that Wisconsin Central cites in support of its argument is *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 760 (7th Cir. 1994), which is not a FELA case at all and does not even mention *Eichel*.  Nor did the issue in *Brandt* involve undermining a party's motivation to work, but rather whether the defendant could use a plaintiff's retirement benefits to impeach an inconsistent statement.

Ultimately, even if *Eichel* could be read to allow evidence of receipt of collateral benefits under some circumstances, Wisconsin Central does not identify any facts in this case distinguishable from *Eichel*, and the court sees none.  Instead, Wisconsin Central's proposed use of Berry's disability benefits to prove that Berry has failed to look for new employment because he fears losing his disability benefits is squarely and expressly barred in *Eichel* under the exact circumstances before this court, having held that benefits received under the Railroad Retirement Act are inadmissible to "show a motive for [the employee's] not continuing work."  375 U.S. at 254–55.  If Wisconsin Central has direct evidence that Berry refused or failed to apply for available work that he could perform despite his physical limitations, it may present that evidence, but it cannot introduce evidence of Berry's receipt of disability benefits as indirect proof of a motive to turn down such work.

Thus, the court will grant plaintiff's motion to exclude Berry's railroad benefits unless offered as proper impeachment or Berry were to otherwise open the door to the evidence by asserting that he did not receive such benefits *or* suffered distress due to a lack of any income.  Before attempting to introduce this evidence to the jury for any of those

reasons, however, Wisconsin Central must receive advance, expressed permission from the court *outside* the jury's presence.  Finally, Berry also asks the court to exclude evidence of any other collateral source, but he does not identify any other sources, and the court declines to rule on that issue in the abstract.

### C. Motion to preclude Wisconsin Central from arguing or offering evidence that Berry assumed the risk of his employment, was "empowered" to work safely, or was contributorily negligent (dkt. #87)

This motion is somewhat hard to follow, except that Berry seeks to preclude Wisconsin Central from relying generally on its safety rules related to employee "empowerment" as support for its argument that Berry was negligent or "assumed the risks" of his employment with the railroad.  Berry also argues that Wisconsin Central should not be permitted to present evidence regarding assumption of risk, which is unavailable as a defense under FELA.  *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 168 (2007).  Finally, he argues that Wisconsin Central's "human factors" expert, David Cades, should be precluded from offering any opinion that amounts to an "assumption of risk" theory.

Wisconsin Central responds that it neither intends to argue that Berry violated any vague "empowerment" rule, nor that he assumed the risk of slipping and falling by accepting railroad employment, so the motion will be granted as undisputed, at least to that extent.  However, Wisconsin Central is not precluded from arguing that Berry failed to remain "alert and attentive," as required by its rules and common sense.  Indeed, FELA allows a defendant to raise a comparative negligence defense, *Norfolk S. Ry*, 549 U.S. at 171, and the evidence identified by Wisconsin Central, including its expert Cade's opinions that Berry was trained to operate safely under conditions similar to those present at the

5

time of his injury, and failed to take precautions accordingly, are relevant to the issue of comparative negligence. Should Wisconsin Central offer evidence that Berry believes is relevant *only* to an assumption of risk theory, Berry may also object at trial if consistent with the court's rulings above.

If Berry is actually arguing that Wisconsin Central lacked sufficient evidence to show that he acted negligently, a motion in limine is not the place to seek judgment as a matter of law. Rather, Berry could have moved for summary judgment on that issue, or will have to move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the appropriate time during trial.

### D. Motion to preclude Wisconsin Central from arguing that Berry would have retired at age 60 under the 60/30 Rule (dkt. #88)

Berry moves to bar evidence of his possible eligibility to receive future retirement benefits under the Railroad Retirement Board's "60/30" rule, which provides that railroad employees are eligible for retirement benefits after reaching 60 years of age and 30 years of service. Wisconsin Central responds that it will not seek to introduce the amount of Berry's future retirement, but rather intends to argue that the date of his future retirement eligibility is relevant to his damages, because the jury will have to determine when he would have stopped working but for his accident. *See Giza v. BNSF*, 843 N.W.2d 713, 724 (Iowa 2014) ("[E]vidence as to when railroad employees with thirty years of service typically retire [is admissible] so long as the evidence does not directly or indirectly refer to retirement benefits.") (collecting cases).

The court agrees that evidence about how long Berry would likely have continued working is relevant and admissible, albeit only during the damages portion of trial. Accordingly, the court will grant this motion in part and deny it in part. Wisconsin Central may not introduce evidence about how much Berry would have received in retirement benefits, but may introduce evidence of *when* railroad employees with 30 years of service typically retire, just as Berry may testify as to any contrary plans he may have pursued.

### E. Motion to inform jury regarding FELA's intent and purpose and that Berry has no remedy under traditional workers' compensation law (dkt. #89)

In a classic example of plaintiff attempting to use a lack of collateral benefits as a sword, despite succeeding in preventing defendant from using similar FELA benefits as a shield, Berry seeks permission to introduce evidence about Congress's intent in passing FELA and that Berry has no remedy under traditional workers' compensation law. In response, Wisconsin Central cites several cases in which courts have precluded just such arguments. *E.g., Stillman v. Norfolk & W. Ry.*, 811 F.2d 834, 838 (4th Cir. 1987) ("So long as the jury was properly instructed on the applicable law, we can see no reason why it would be either necessary or appropriate for the jury to hear an argument about Congress's intent in enacting [FELA].").  The court agrees with Wisconsin Central in part -- the jury does not need to hear evidence or argument about congressional intent behind FELA.

However, the court agrees with Berry that the jury is likely to be familiar with workers compensation and may wonder how that system applies to this case.  To address this concern, the court proposes the following instruction:

> You may be familiar with the workers compensation, which is
> a state law that applies to most workplace injuries.  However,

> injuries to railroad employees are governed by a law called the Federal Employers Liability Act, commonly referred to as FELA. You should disregard anything you know about the rules of workers compensation.  After you hear the evidence, I will give you more detailed instructions about FELA and how to decide those issues.

*Sheridan v. Wisconsin Central* (19-cv-871-jdp) Dkt. #132, at 2.  That instruction is consistent with *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006), in which the court of appeals stated that it would be "inappropriate" to "instruct the jury that [the plaintiff] was ineligible for workers' compensation payments." In this case, the court will not instruct the jury on Berry's eligibility for workers compensation, only that workers compensation is not at issue in this case.  The instruction will hopefully avoid some of the confusion that arose in *Schmitz*, when the jury asked during deliberations whether the plaintiff was receiving workers compensation benefits.  *Id.*  Of course, if either party objects to this instruction, they are free to propose alternative language.  Other than this instruction, the court sees no need to address this issue further.  Similarly, neither the parties nor counsel should address it in their testimony or argument, other than to direct the jury to that instruction.

### F.  Motion to preclude evidence or reference relating to disciplinary matters involving Berry (dkt. #90)

This motion will be granted as unopposed.

### G.  Motion to bar Wisconsin Central from arguing that Berry failed to mitigate damages (dkt. #91)

Berry next represents that it is "uncontroverted" that he has "made very substantial efforts to mitigate his damages," including by undergoing physical therapy and undertaking

8

an extensive job search.  (Dkt. #91, at 2.)  Not surprisingly, Wisconsin Central disagrees.  Regardless, this motion will be denied.   Like Berry's motion regarding comparative negligence, if Berry believed that Wisconsin Central lacks sufficient evidence to prove a mitigation defense, he should have moved for summary judgment on that issue.  A motion in limine is not the place to seek judgment as a matter of law.  Of course, if Wisconsin Central *fails* to offer evidence of Berry's failure to mitigate, Berry may still move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the appropriate time.

### H. Motion to preclude Wisconsin Central from arguing that Berry's injuries should be apportioned to any alleged genetic or preexisting condition (dkt. #92)

Under FELA, a railroad company is liable so long as its negligence contributed in some way to the plaintiff's injury.  *See* 45 U.S.C. § 51 (railroad employer liable if an employee's injury or death is caused "in whole or in part" by employer's negligence).  Thus, a plaintiff's damages cannot be reduced even if something else aside from the employer's negligence may have also contributed to the plaintiff's injuries.  *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 166 (2003) ("Under the FELA, an employee who suffers an 'injury' caused 'in whole or in part' by a railroad's negligence may recover his or her full damages from the railroad, regardless of whether the injury was also caused 'in part' by the actions of a third party.").  Relying on this rule, Berry argues that Wisconsin Central should be precluded from introducing evidence that a preexisting, congenital defect contributed to the hip injuries he sustained after falling on the tracks.

Wisconsin Central responds that it does not intend to argue that Berry's preexisting condition *contributed* to his hip injuries.  Instead, Wisconsin Central intends to argue that Berry's serious hip problems were caused *solely* by his preexisting condition.  In particular, Wisconsin Central's medical expert, Dr. Neisen, will opine that the *only* injury Berry sustained from falling on the track was a bruise, from which he recovered within six weeks of the accident, and for which he will require no future medical care.  Dr. Neisen further opines that Berry's hip surgeries, as well as any permanent left hip impairments, were not caused (or even aggravated) by the fall, and were instead solely the result of his preexisting conditions.  (Neisen Rep. (dkt. #93-9) 40–45.)

Of course, *Ayers* does not preclude Wisconsin Central from arguing that something else was the *sole* cause of Berry's injuries. *See Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 504-05 (1957) (jury was instructed to return a verdict for the respondent if it was found that negligence of the petitioner was the sole cause of his mishap); *Taylor v. Illinois Central R.R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993) (same); *Wardwell v. Union Pac. R.R. Co.*, 2017 IL 120438, ¶ 17, 88 N.E.3d 772, 776 (railroad permitted to argue third party's negligent conduct was "the only negligence conduct that caused the accident").  As a result, the court will grant plaintiff's motion in part and deny it in part:  Wisconsin Central may present evidence that Berry's serious hip injuries were caused *solely* by Berry's preexisting conditions; at the same time, Wisconsin Central may not argue that Berry's preexisting conditions *contributed* to any injuries or pain he suffered *because* of his fall.

## II. Wisconsin Central's Motions in Limine

### A. Omnibus Motion (Dkt. #96)

#### 1. Motion to preclude references to other lawsuits and claims involving Wisconsin Central

This motion will be granted as unopposed, with the exception that Berry may seek permission to introduce evidence from other lawsuits for impeachment purposes if appropriate.

#### 2. Motion to preclude references to Canadian National Railway Company as Berry's employer or as the owner of the premises

Wisconsin Central is a direct subsidiary of Canadian National, but argues that references to Canadian National would be confusing to the jury, since it (1) was not Berry's employer and (2) is not a party to this case. Wisconsin Central has not identified any risk of prejudice from the jury hearing about its association with Canadian National, and it admits that many of its own employees will likely discuss Canadian National or "CN." So, this motion will be denied, with the caveat that the parties should not present evidence or argument suggesting that Canadian National, rather than Wisconsin Central, was Berry's employer or is a party in this case.

#### 3. Motion to preclude evidence regarding the exclusive remedy and purpose of FELA

This motion will be granted in part and denied in part, for the same reasons and with the same effect as discussed with regard to Berry's similar motion discussed above (dkt. #89).

### 4. Motion to preclude suggestions that Wisconsin Central should be punished or evidence regarding Wisconsin Central's size, wealth or its corporate ownership

Berry does not identify any relevant purpose for offering evidence about Wisconsin Central's size, wealth or corporate ownership, so this motion will be granted.

### 5. Motion to preclude suggestions that Berry or any witness employed by Wisconsin Central has faced or will face retaliation for opposing it

Wisconsin Central wishes to exclude evidence that Berry or any witness employed by Wisconsin Central has faced or will face retaliation for opposing defendant.  In response, Berry argues that a witness's employment status, position with Wisconsin Central and any bias or prejudice associated with their employment may be argued to the jury.

The parties are addressing different issues.  Berry does not suggest that he has any *evidence* of retaliation, so the court will grant that aspect of the motion because any argument that a witness "will face retaliation" would be speculative.  However, Berry is free to ask questions of witnesses about their status as an employee and any biases they may have because of that employment relationship, as well as argue *generally in closing* that ongoing employment may have influenced testimony.

### 6. Motion for use of a per diem formula for the calculation of pain and suffering damages

Wisconsin Central seeks to preclude Berry from asking the jury to calculate his pain and suffering using a "per diem" method, which is multiplying a monetary figure by a unit of time.  As Berry points out, the Seventh Circuit does impose a categorical bar on that method.  *See Waldron v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969) ("[A]n inflexible rule

treating a per diem argument as reversible error is not advisable. We think that this argument is permissible if made within limitations which the trial judge to insure fairness may impose such as the giving of a suitable cautionary instruction or the taking of other safeguards."); *see also Crecy v. Kankakee Sch. Dist. #111*, No. 15-cv-1014, 2017 WL 6945336, at \*6–7 (C.D. Ill. Feb. 6, 2017); *Caletz ex rel. Estate of Colon v. Blackmon*, 476 F.Supp.2d 946, 959 (N.D. Ill. 2007).

So the court will deny this motion as premature.  However, if Berry wishes to rely on this method, he must provide notice to Wisconsin Central and the court before trial, explaining his basis for doing so.  At that point, Wisconsin Central may object or propose a cautionary instruction, which the court will not hesitate to give should plaintiff's counsel approach, much less cross, the line suggested by the Seventh Circuit.

### 7. Motion regarding evidence of loss of consortium

Berry says he is not asking for damages for loss of consortium, so this motion is granted as unopposed.

### 8. Motion regarding evidence of Berry's financial condition

Wisconsin Central asks for an order "barring plaintiff from offering any evidence or making any argument as to his financial condition or any financial hardship that he or his family have experienced as a result of the incident which is the subject of his complaint." (Dkt. #97, at 15.)  In response, Berry says that this motion is too broad because it would encompass evidence of lost earning capacity, lost wages and his efforts at mitigating his damages.  The court agrees.  Berry will not be prohibited from proving his damages. If

13

Berry attempts to offer testimony or other evidence about his financial condition that is unrelated to his damages, Wisconsin Central may object at that time, *or* following that testimony, ask for a sidebar to discuss whether in doing so, plaintiff has opened the door to discussing collateral sources of income as previously discussed.

### 9.   Motion to preclude testimony regarding legal conclusions

As a general principle, witnesses may not give legal opinions, *U.S. v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008), and the court will not permit witnesses to testify about the meaning of a law or how the law dictates a particular answer to a special verdict question. Under Federal Rule of Evidence 704, however, experts and other witnesses may give testimony as to their lay understanding of the relevant legal elements and even answer an ultimate fact issue to be resolved in the case if premised on their field of expertise, rather than law.  Because Wisconsin Central does not identify any specific legal conclusions that should be precluded, the court cannot determine whether it seeks to preclude proper or improper opinions.   Accordingly, the motion will be denied as vague and overbroad, without precluding Wisconsin Central from objecting at trial to specific testimony that should be excluded as improper legal testimony or conclusion.

### 10.   Motion to preclude references to plaintiff as a good or safe employee

Berry does not oppose this motion, and the court will grant it with two caveats. First, Wisconsin Central is contending that Berry was negligent, so evidence that Berry was acting safely at the time of the incident is relevant.  Second, the ruling applies equally to Wisconsin Central, which may not offer evidence that Berry was a "poor" or "unsafe"

employee, or that Wisconsin Central is a "good" or "safe" employer as a general characterization.

### 11.  Motion to preclude references to past medical expenses

Wisconsin Central argues that evidence of Berry's medical expenses should not be allowed because they were all paid by Wisconsin Central or railroad-provided insurance. Berry naturally responds that he had to pay copays for some of his treatment, and that the monetary size of medical bills are evidence of his injuries.

However, both parties plainly plan to introduce extensive testimony and other evidence about the extent of Berry's injuries and his treatment, making the cost of that treatment substantially less probative of anything about the injuries or treatment, while still potentially unfairly prejudicial or at least confusing to the jury.  In particular, even if Berry paid part of his premiums or copays, he does not, and could not, reasonably argue that those amounts reflect anything meaningful about the medical bills, much less the extent of Berry's injuries and treatment.  More importantly, even if they did, the potential confusion to the jury would outweigh any benefit of introducing the bills.  *See Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1565 (7th Cir. 1990) ("[S]ince Varhol could not recover the expenses reflected in those bills, the amounts of those expenses bore little, if any, relevance to this case. Even if the amounts were somehow relevant, the district court did not abuse its discretion in finding the possibility of jury confusion, misuse, and double-recovery outweighed the bills' probative value.").  Thus, the court will grant the motion absent some proffer that the sheer monetary amount is *uniquely* required to convey the extent of Berry's injuries and treatment.

## 12.  Motion to exclude evidence of future medical expenses

Wisconsin Central also argues that Berry should be precluded from seeking damages for future medical expenses, because he lacks sufficient evidence to prove that he will incur any.  Berry disagrees, pointing to evidence offered through his expert witness and examining physician that he will need future medical treatment.

The court will deny this motion.  It is up to the jury to decide whether Berry's expert is credible and persuasive.   At the FPTC or after the evidence is presented at trial, Wisconsin Central may renew its argument if it believes Berry cannot or has failed to submit evidence to support a claim of future medical expenses.

## 13.  Motion to exclude witnesses from the courtroom

Wisconsin Central frames this motion as a request to sequester witnesses under Federal Rule of Evidence 615, and Berry doesn't oppose that request.  Regardless, the court will order sequestration of *lay* witnesses upon request by either party as a matter of course. However, Wisconsin Central also asks the court to prohibit all witnesses from "having any discussion regarding any trial testimony or reviewing any deposition transcripts or video that will be substantively used at trial prior to the time that the witness is called to testify." (Dkt. #97, at 35–66.)   Rule 615 does not include such a prohibition, and Wisconsin Central has not justified its request for its proposed bar.  Accordingly, the court will order lay witness sequestration but will neither prohibit experts from attendance nor any witness from reviewing deposition transcripts or video or discussing trial testimony with counsel except during any break or recess once cross-examination has begun.  Of course, discussions between counsel and non-party witnesses are also proper subjects for cross-examination.

### 14.  Motion to exclude references to the railroad or railroad industry as a "dangerous industry"

Berry does not oppose this motion, so it will be granted, with the caveat that the court will not preclude evidence or argument regarding whether specific tasks, practices or conditions relevant to the incident in this case were dangerous.

### 15.  Motion regarding evidence of lost wages

Wisconsin Central further argues that Berry should be limited to recovery for "loss of earning capacity," and not for "lost wages" or "lost pay."  This motion will be denied since employees can recover lost wages under FELA.  *BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 900 (2019).  To the extent that Wisconsin Central is arguing that Berry lacks evidence to show that he is unable to work, or that Wisconsin Central will prove that Berry failed to mitigate his damages, these are arguments that can be made to the jury after the presentation of the evidence.

### 16.  Motion to preclude "reptile tactics" at trial

Wisconsin Central next seeks to bar evidence and argument that it says would improperly appeal to the passion or sympathy of jurors, which it describes as "reptile theory" questions.  This court has described that theory in the past as follows:

> [T]he "Reptile Theory" litigation strategy . . . is based on a book titled Reptile: The 2009 Manual of the Plaintiff's Revolution, 45 (1st ed. 2009), [that] impermissibly attempts to redefine the standard of care in negligence cases by suggesting to the members of the jury that they have the power to improve the safety of themselves, their family members, and their community by rendering a verdict that will lead to the reduction of "dangerous" or "unsafe" conduct. It is referred to as the Reptile Theory because it "instructs lawyers to appeal to

> the jurors' own sense of self-protection in order to persuade
> and prevail," which "awakens the reptilian part of the brain in
> each juror and overcomes logic and emotion."

*Hodgson v. Wisconsin Cent. Ltd.*, No. 19-CV-15-JDP, 2020 WL 3251187, at *8 (W.D. Wis.

June 16, 2020) (citing *Gannon v. Menard, Inc.*, No. 18cv251JMSMJD, 2019 WL 7584294,

at *5 (S.D. Ind. Aug. 26, 2019)).   In more colloquial terms, it amounts to a not very subtle

violation of the so-called "Golden Rule" through the back door.   Wisconsin Central

includes references to several questions that plaintiff's counsel asked witnesses during

depositions as improper and qualifying as "reptile theory" questions.   (Dkt. #97, at 40–

43.)

Wisconsin Central's motion to exclude any questioning based on this "theory" is

simply too broad and ill-defined.   Both sides' questions are governed by Federal Rules of

Evidence and the standards governing FELA as articulated in the jury instructions, and

argumentative departures from evidentiary rules and standards, including suggesting a

standard of safety that exceeds what is required may be objectionable.   At the same time,

an appeal to common sense is not.   If either side believes that counsel's questions are

departing from these rules and standards to mislead the jury in any way, they may object

at that time.   I am also prepared to address at the FPTC some of the specific examples

offered by defendant in its 16th MIL (pp. 40-43) if either party wishes.   What I am not

willing to do is to raise an art form to flat bar, so the motion is denied.

### 17.  Motion to preclude argument that Wisconsin Central puts profits over people

In response to this MIL, Berry argues that the court should not unfairly limit his

trial strategy and prohibit him in advance from arguing that Wisconsin Central places profits over people.  He argues that the court should wait to rule on this motion until the evidence is developed at trial.  But Berry identifies no reason to believe that an argument about the railroad placing profits over people might be relevant to liability *or* damages, and the court sees none.  Accordingly, the court will grant the motion.

### 18.  Motion to preclude evidence of issues raised in Wisconsin Central's motion for partial summary judgment

Wisconsin Central asks the court to preclude evidence and argument concerning Berry's claims challenged at summary judgment, because those claims are barred by the Federal Railroad Safety Act.  However, the court denied Wisconsin Central's motion and rejected its preclusion argument, so this motion will also be denied.

### 19.  Motion to preclude evidence of health conditions of Berry's wife and children

Wisconsin Central asks the court to preclude evidence that Berry's wife and two children have been diagnosed with a progressive genetic condition that requires constant and costly medical treatment.  Wisconsin Central argues that such evidence is irrelevant, would confuse the jury and would be unduly prejudicial to Wisconsin Central because of its likely emotional impact.  Berry responds that his family's medical needs is relevant to respond to Wisconsin Central's argument that he likely would have retired early.  He says that his family's need for costly medical care would have affected his retirement decision.

The court will grant the motion in part and deny it in part.  Berry may present *brief* testimony that his family suffers from serious medical conditions and that their needs

would have affected the timing of his retirement.  If the parties need further clarification, they may ask at the FPTC.

**20. Motion to preclude evidence relating to conditions in other areas of the yard**

**21. Motion to preclude evidence of the condition of the track post-incident**

**22. Motion to preclude evidence of post-incident stump removal**

Wisconsin Central's next three motions (20, 21, and 22) are related.  Indeed, Wisconsin Central seeks to limit Berry from presenting evidence of:  the conditions of the track area, other than in the specific area here he fell; debris in other areas of the yard when Berry's experts later conducted their inspections; how the track and yard area looked years after the incident; and Wisconsin Central having removed the stump on which Berry's says he was injured.  Defendant argues that all of this evidence would be unfairly prejudicial to Wisconsin Central, cause confusion and violate the rule excluding evidence of subsequent remedial measures.  Berry responds that all of this evidence is relevant to provide context for his claims, to show that Wisconsin Central exercised control over the area, and constructive notice of the poor conditions in the area of the track where Berry fell.

These motions will be granted in part and denied in part.  First, the parties may introduce into evidence reasonably contemporaneous photographs from the "Tork track" around the area in which Berry says that he fell and was injured.  They may also introduce photographs of the general yard area to provide context for the location of the Tork track and Berry's movements on the night of the incident, but not to suggest that any images taken significantly before or after the incident accurately depict the state of yard at the

time of the incident.  Nor may Berry show photographs from other areas of the yard to show or argue that other areas were unsafe or to suggest that Wisconsin Central failed to maintain the yard more generally.  In particular, the condition of the yard years after the incident is not probative of the condition of the yard on the night of the incident.  Nor is the condition of the yard in other areas relevant, as Berry has not argued or suggested that any employees were injured from falling on other tracks in the yard with similar hazards to those at the Tork track.

Finally, Wisconsin Central's removal of the stump years after the incident is inadmissible as well.  First, Berry argues that the removal is relevant to Wisconsin Central's control of the area and the feasibility of removing the stump, but those issues are not in dispute.  Second, absent a legitimate exception, introduction of removal violates the prohibition against a subsequent, remedial repair.

### 23.  Motion to preclude references to a lack of cab or transportation services

Wisconsin Central says that the lack of a cab or transportation services to give Berry a ride back to the locomotive on the night of the incident is irrelevant.  Berry concedes that the lack of transportation services would not show any negligence by Wisconsin Central, but asks the court to reserve ruling on this motion "until the appropriate time at trial should evidence of transportation services become relevant to a material issue."  (Dkt. #127, at 28.)  However, Berry does not identify *any* admissible purpose that the evidence might have, so the court will grant the motion.  If Berry can identify a reason to admit this evidence, he may proffer that reason seeking reconsideration before or at the FPTC.  Otherwise, it is out.

21

### 24. Motion to preclude arguments regarding train length

Wisconsin Central says that Berry should be precluded from arguing that it was negligent in requiring Berry to walk the entire length of a long train in order to reach the locomotive because such arguments are precluded by the Interstate Commerce Commission Termination Act and the Commerce Cause governing train length. The court will deny this motion, having already rejected Wisconsin Central's argument that Berry's FELA claims could be precluded by a different federal statute, the Federal Railroad Safety Act, based on the Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Company*, 573 U.S. 102 (2014). (Dkt. #50.) Wisconsin Central fails to address *POM Wonderful* or this court's summary judgment decision in its recent motion in limine, and absent a persuasive argument to do so, the court declines to revisit that issue.

### 25. Motion regarding reasons for EMT's removing Berry by walking down the middle of the track

Next, Wisconsin Central argues that Berry should be precluded from discussing the reasons why the EMTs decided to remove him from the incident area by walking down the middle of the track with a carry chair. Berry responds that he should be permitted to introduce evidence from which a jury could infer that the EMTs used the middle of the track because other routes were unsafe.

This motion will be granted in part and denied in part. Neither Berry nor any of his witnesses may speculate about why the EMTs took a specific route; nor may Berry or anyone else rely on hearsay evidence to suggest a motive for the EMTs actions. However, Berry may introduce evidence, with adequate foundation, about the conditions of the track

and safety hazards that were present, including observations by EMTS themselves who were named as witnesses, should they be willing to testify.

### 26. Motion to exclude testimony of an industrial expert review of Berry's productivity

Wisconsin Central seeks to preclude Berry, his witnesses and his counsel from referring to an industrial expert review of Berry's productivity that his doctor, Dr. Hebl, interpreted as ranking him 16% more productive than his peers. Berry responds that the evidence is relevant to show that he is a motivated worker and that his preexisting degenerative condition did not limit his ability to work.

Absent further elaboration and defendant opening the door, the court will grant this motion. First, the data on which Berry relies is drawn from a table in the report from Berry's economics expert, Dr. Felix Friedt, showing Berry's annual income. (Friedt Rep. (dkt. #107) 6, Table II). The table appears to show merely that Berry's annual earnings were 6% higher than comparable peers. However, nothing in the table or the economist's report describes Berry as being 6% more productive, let alone 16% more productive. Nor is there anything in the report explaining the connection of this 6% earnings analysis to Berry's productivity. As importantly, plaintiff has not proffered any evidence that Dr. Hebl has the expertise to make that connection. Second, unless defendant should dispute Hebl's productivity, there would appear no reason for plaintiff to offer any such evidence.

### B. Motion to bar or limit testimony of Daniel Billington (dkt. #94)

Wisconsin Central moves to preclude the testimony of Berry's retained lighting expert on the grounds that: (1) Billington trespassed on Wisconsin Central's property to

gather information to support his opinion; (2) Billington is unqualified; and (3) his opinions lack factual basis and would be unhelpful to the jury.

The court will deny the motion. Billington not only denies that he trespassed on Wisconsin Central's property, but provides evidence that he took steps to ensure that he was not trespassing, by reviewing GIS records and requesting permission from the landfill company, who he thought owned the property. Even if Billington mistakenly entered Wisconsin Central's property, he acted unintentionally and the court will not exclude his opinions for that reason, nor will the court encourage Wisconsin Central to make yet another needless sideshow about it.

Wisconsin Central's arguments about Billington's qualifications and the usefulness of his opinions are also not sufficient reason to exclude his opinions. Plaintiff had adequately explained Billington's experience and the data he used in rendering his opinions. All of Wisconsin Central's criticisms go to the weight the jury should give his opinions, not to their admissibility.

The court notes that Berry argues Wisconsin Central should be sanctioned because Billington's inspections of the property proves Wisconsin Central removed certain hazards, including trees and logs in particular, from the relevant area before Billington arrived. This argument is meritless. Billington's inspection occurred more than two years after the incident at issue in this case, and Berry does not point to any evidence suggesting that Wisconsin Central removed any hazards that were present at the time of the incident or even arguably a material cause, in any way, of Berry's injuries, until long after the relevant events here. That Wisconsin Central cleaned up trees and logs around the tracks some *two*

24

*years* after the incident is irrelevant, absent proof of a direct link to Berry's injuring himself *and* Wisconsin Central somehow opening the door to a subsequent repair.

### C. Motion to exclude Berry from claiming loss of future earning capacity and damages related to his congenital hip condition (dkt. #108)

Finally, Wisconsin Central argues that Berry should be precluded from claiming loss of future earning capacity because his congenital hip condition would have rendered him unable to work as a railroad conductor regardless of his fall and injury at issue in this case. However, Wisconsin Central's argument would require the court to assume the jury will accept the opinions of Wisconsin Central's medical experts and reject the opinions of Berry's medical experts, which the court cannot do. There are genuine disputes of material facts regarding the cause of Berry's injuries and permanent impairments that must be resolved by *the jury*, so the court will deny this motion.

ORDER

IT IS ORDERED that:

1)  Plaintiff Michael Berry's motions in limine are resolved as follows:

    a.  Motion to preclude evidence concerning Berry's alleged past use of drugs and addiction treatment (dkt. #85) is GRANTED.

    b.  The motion to exclude railroad disability benefits, or any other collateral source (dkt. #86) is GRANTED as to the railroad disability benefits except for the purpose of impeaching prior inconsistent statements or if Berry opens the door, and DENIED as to "any other collateral source." If Wisconsin Central wishes to offer evidence of any other collateral source as evidence, it should first seek permission from the court and identify permissible purpose for the evidence.

    c.  The motion to preclude evidence that Berry assumed the risk of his employment, was "empowered" to work safely or that he was

25

contributorily negligent (dkt. #87) is GRANTED IN PART and DENIED IN PART as set forth above.

d. The motion to preclude Wisconsin Central from arguing that Berry would have retired at age 60 under the 60/30 Rule (dkt. #88) is GRANTED IN PART and DENIED IN PART as set forth above.

e. The motion to inform jury regarding FELA's intent and purpose and that Berry has no remedy under traditional workers' compensation law (dkt. #89) is GRANTED IN PART and DENIED IN PART as set forth above.

f. The motion to preclude evidence or reference relating to disciplinary matters involving Berry (dkt. #90) is GRANTED.

g. The motion to bar Wisconsin Central from arguing that Berry failed to mitigate damages (dkt. #91) is DENIED.

h. The motion to preclude Wisconsin Central from arguing that Berry's injuries should be apportioned to any alleged genetic or preexisting condition (dkt. #92) is GRANTED IN PART and DENIED IN PART as set forth above.

2) Wisconsin Central's omnibus motion in limine (dkt. #96) is resolved as follows:

a. The motion to preclude references to other lawsuits and claims involving Wisconsin Central is GRANTED as set forth above.

b. The motion to preclude references to Canadian National Railway Company is DENIED as set forth above.

c. The motion to preclude evidence regarding the exclusive remedy and purpose of FELA is GRANTED IN PART and DENIED IN PART as set forth above.

d. The motion to preclude evidence or argument suggesting that Wisconsin Central should be punished or evidence regarding its size, wealth or corporate ownership DENIED.

e. The motion to preclude evidence or argument suggesting that any witness employed by Wisconsin Central has faced or will face retaliation is GRANTED as set forth above.

f. The motion for preclude use of a per diem formula for the calculation of pain and suffering damages is DENIED as set forth above.

g. The motion to preclude evidence of loss of consortium is GRANTED.

h. The motion to preclude evidence of plaintiff's financial condition is DENIED.

i. The motion to preclude testimony regarding legal conclusions is DENIED as set forth above.

j. The motion to preclude references to plaintiff as a good or safe employee is GRANTED as set forth above.

k. The motion to preclude references to past medical expenses is GRANTED.

l. The motion to exclude evidence of future medical expenses is DENIED.

m. The motion to exclude witnesses from the courtroom is GRANTED IN PART and DENIED IN PART as set forth above.

n. The motion to excluded references to the railroad industry as "dangerous" is GRANTED as set forth above.

o. The motion to preclude evidence of lost wages is DENIED.

p. The motion to preclude "reptile tactics" is DENIED.

q. The motion to preclude argument that Wisconsin Central puts profits over people is GRANTED.

r. The motion to preclude evidence of issues raised at summary judgment is DENIED.

s. The motion to preclude evidence of health of plaintiff's wife and children is GRANTED IN PART and DENIED IN PART as set forth above.

t. The motion to preclude evidence relating to conditions in other areas of the yard is GRANTED IN PART and DENIED IN PART as set forth above.

27

    u. The motion to preclude evidence of condition of track post-incident is GRANTED IN PART and DENIED IN PART as set forth above.

    v. The motion to preclude evidence of post-incident stump removal is GRANTED.

    w. The motion to preclude references to lack of cab or transportation services is GRANTED.

    x. The motion to bar arguments regarding train length is DENIED.

    y. The motion to preclude argument or evidence regarding reasons why EMTs walked down middle of track is GRANTED IN PART and DENIED IN PART as set forth above.

    z. The motion to exclude testimony of an industrial expert review of plaintiff's productivity is GRANTED.

3) Wisconsin Central's motion to bar or limit testimony of Daniel Billington (dkt. #94) is DENIED.

4) Wisconsin Central's motion for leave to file a supplemental motion in limine (dkt. #108) is GRANTED.

5) Wisconsin Central's motion to exclude Berry from claiming loss of future earning capacity and damages related to his congenital hip condition (dkt. #109) is DENIED.

Entered this 19th day of August, 2022.

                  BY THE COURT:

                  /s/

                  _____

                  WILLIAM M. CONLEY
                  District Judge